UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAMES WESLEY HOWARD, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:10-CV-571 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |
| | § | |

## MEMORANDUM AND ORDER

Petitioner James Wesley Howard (TDCJ # 1461548) seeks habeas corpus relief under 28 U.S.C. section 2254, challenging his 2007 conviction for indecency with a child. Respondent has filed a motion for summary judgment. Docket Entry No. 18. Having considered the pleadings, the record, and the applicable law, the Court **GRANTS** Respondent's motion for the reasons set forth below.

## I. PROCEDURAL HISTORY

Howard was charged with aggravated sexual assault and indecency with a child and tried in the 23rd Judicial District Court of Brazoria County. The indictment alleged enhancements for two prior attempted capital murder convictions. The jury convicted Howard of indecency with a child and, after finding the enhancements true, sentenced Howard to life imprisonment. The First District Court of Appeals affirmed the judgment. *Howard v. State*, No. 01-07-

00818-CR, 2009 WL 350632, at *1 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, pet. ref'd) (mem. op., not designated for publication).  The Court of Criminal Appeals denied Howard's petition for discretionary review on September 23, 2009.

Howard filed an application for state writ of habeas corpus, which was denied without written order on August 25, 2010.  Howard then filed his federal petition for the writ of habeas corpus in this Court, arguing that he is entitled to relief because (1) the state process was defective; (2) he was denied a speedy trial; (3) his trial attorney rendered ineffective assistance; and (4) the prosecutor engaged in improper argument.

## II.   FACTUAL BACKGROUND

The following statement of facts is taken from the First District Court of Appeals opinion on Howard's direct appeal:

> On February 25, 2000, appellant attended a barbeque at Suzann Hadden's home. Appellant and Ms. Hadden were dating at the time. Ms. Hadden and her three children, including her daughter, A.C., who was eight years old at the time, had recently moved to a new house in Liverpool, Texas. Appellant and Ms. Hadden's father had been drinking together before arriving at Ms. Hadden's house that day.
>
> Following the barbeque, appellant, Ms. Hadden, Ms. Hadden's father, and A.C. went into the house. Around midnight, Ms. Hadden went to sleep in her bedroom. After Ms. Hadden went to sleep, Ms. Hadden's father, A.C.'s grandfather, fell asleep on the sofa. A.C. stated she was scared to sleep alone and asked appellant if she could sleep in her mother's bed with appellant and Ms. Hadden. Appellant gave A.C. permission and went into the bathroom to change into clothes for sleeping. Ms. Hadden was still asleep on the right side of the bed, appellant lay next to her in the middle, and A.C. lay on the left.

A.C., who was 16 years old at the time of trial, testified that after she fell asleep, she awakened on her back with her legs spread. Appellant's hands were up her shorts and touching her vagina. A.C. said appellant had his hand "around . . . the clitoris area," but did not penetrate her vagina with his finger. Appellant took his hand away and put it back several times. A.C. testified that she could not see appellant and did not know what he was doing, but it sounded like he could have been putting his fingers into his mouth. After A.C. rolled away from appellant onto her side, appellant put his hand up her shirt and "fondled" her breasts for a few seconds.

A.C. then left the bedroom and walked into the living room to lie down on a bean bag chair next to her grandfather, who did not wake up during these events. A.C. testified that appellant then came out of the bedroom and asked if she was coming back to bed. A.C. replied that she was going to sleep next to her grandfather on the bean bag chair. Appellant asked A.C. if "she was sure" twice, to which A.C. replied that she was. Appellant returned to the bedroom, where he remained for the rest of the night.

Early the next morning, Ms. Hadden left for work while everyone in the house was still asleep. A.C. stayed home during the day with her grandfather and appellant. When Ms. Hadden arrived home from work, A.C. told her mother what had happened the previous night. Ms. Hadden then confronted appellant, who denied the allegation.
After the confrontation, appellant went inside to help Ms. Hadden's father with a TV. He then left the house, saying he had to make some phone calls. A few hours later, appellant telephoned Ms. Hadden. During the conversation, Ms. Hadden asked appellant to return to the house so they could talk. The telephone call was the last communication between Ms. Hadden and appellant.

*Howard*, 2009 WL 350632, at *1.

## III.   STANDARD OF REVIEW

The Court reviews Howard's petition under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254.  When a state court has adjudicated a claim on the merits, federal habeas relief cannot be granted under the AEDPA unless the state court decision (1) was contrary to clearly established federal law as determined by the United States Supreme Court; (2) involved an unreasonable application of clearly established federal law; or (3) was based on an unreasonable factual determination in light of the evidence presented. *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 784 (2011) (quoting 28 U.S.C. § 2254(d)).  A summary denial of claims by the state habeas court is still considered an adjudication on the merits. *See id.* at 784–85.

State court determinations on questions of law and mixed questions of law and fact receive deference unless they are contrary to, or unreasonable applications of, clearly established federal law.  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" precedent if it "applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] . . . on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).  A state court decision involves an unreasonable application of federal law "if the state court correctly identifie[d] the

governing legal principle . . . but unreasonably applie[d] it to the facts of the particular case." *Id.* (citation omitted).

State court determinations on pure questions of fact receive deference unless based on an unreasonable factual determination in light of the evidence presented. 28 U.S.C. § 2254(d)(2).   A federal court must presume that the state court's underlying factual determinations are correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 573 U.S. 322, 330–31.  This deference extends to both express and implicit findings of fact.  *Garcia v. Quarterman*, 454 F.3d 441, 444–45 (5th Cir. 2006) (citations omitted).  The presumption of correctness is especially strong when the trial court and habeas court are the same.  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted).

## III.   ANALYSIS

### A.   Due Process Claim

In his first ground of relief, Howard argues that the state habeas trial court and the Court of Criminal Appeals deprived him of his due process rights by failing to hold full and fair evidentiary hearings.  To the extent that Howard seeks relief based on defects in the state habeas process, this claim is not cognizable on federal habeas review.  *See Rudd v. Johnson*, 256 F.3d 317, 319–20 (5th Cir. 2001) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in

federal court." (citations and internal quotations marks omitted)).

Howard argues that this Court should not afford any weight to the state habeas court's determinations because no evidentiary hearings were held. The Supreme Court, however, has established that a state court's failure to make explicit findings of fact does not affect the deference the AEDPA accords the state court's determination. *See Richter*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." (citations omitted)); *see also Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (per curiam) (finding that deference to the state court is not diminished when the state court "did not explain the reasons for its determination"). Accordingly, Howard is not entitled to federal habeas relief on this due process claim.

### B.    Speedy Trial Claim

Howard next argues that he was deprived of his Sixth Amendment right to a speedy trial because his case was not brought to trial until more than seven years after he was indicted. The Brazoria County grand jury indicted Howard in 2000, but he was not arrested until 2006 and his trial did not occur until 2007. He claims he was unaware of the charges against him when they were brought. Further, he contends that when he was arrested in Connecticut on a parole violation in 2002

and subsequently returned to Houston, Brazoria County failed to pursue the charges or make him aware that the charges existed until his 2006 arrest, despite regular check-ins with his parole officer in neighboring Harris County.  After his arrest, Howard was held for twenty months pending trial, while the state searched for its witnesses.

Respondent argues that, to the extent Howard relies on his ignorance of the charges against him and his 2002 return to Texas for parole violations, his speedy trial claim is procedurally barred because he failed to raise these facts in state court.  Respondent further contends that Howard is responsible for the delay in prosecution by being voluntarily absent from Texas, that Howard failed to assert his right to a speedy trial, and that Howard has failed to demonstrate prejudice as a result of the delay.

### 1.    Procedural Default

The AEDPA requires that a petitioner must exhaust his state court remedies before advancing his claims in federal court.  28 U.S.C. § 2254(b)(1).  "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (quoting *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999)).  Generally, "dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the

claim presented to the state courts." *Id.* (emphasis in original) (quoting *Anderson v. Johnson*, 338 F3d 382, 386–87 (5th Cir. 2003)).  But "evidence that places the claims in a significantly different legal posture must first be presented to the state courts." *Id.* (quoting *Anderson*, 338 F.3d at 387).  Whether the petitioner has satisfied the exhaustion requirement "is necessarily case and fact specific." *Id.* (citing *Anderson*, 338 F.3d at 388 n.24).  "Lack of exhaustion may be excused" if the petitioner "can demonstrate cause for the defaults and actual prejudice" or if the petitioner "can show that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 491–92 (citations and internal quotation marks omitted).

In Howard's state habeas petition, he contended that he was denied his right to a speedy trial when (1) his trial counsel told him that it would do no good to ask for a speedy trial because of backlog in the court system and Howard's parole detainer and (2) he was incarcerated for twenty months while the state attempted to locate its witnesses.  Howard now, for the first time, contends that he was unaware of the charges against him in 2000, and that he was not made aware of the charges upon his arrest in 2002 for a parole violation or any time thereafter until his 2006 arrest.  Essentially, in addition to his original speedy trial claim for the twenty-month delay once he was arrested on the Brazoria County charge, he newly alleges that the state denied him a speedy trial by failing to locate him during the six years

between his indictment and arrest.  These new allegations, based on information available to Howard at the time he filed his state habeas petition, fundamentally alter the substance of Howard's claim, extending the time frame for the speedy trial violation from the original twenty months to more than seven years.  Bringing these new allegations that implicate issues concerning Brazoria County's diligence and Howard's avoidance of the indictment at this juncture demonstrates one of the reasons for the exhaustion requirement—it is difficult to consider such claims in a vacuum without the development of a factual record in state court.

To exhaust this new claim, Howard would have to present it to the state habeas court in the same manner that he has presented it before this Court.  This successive writ would be dismissed under Texas's abuse-of-the-writ doctrine.  *See* Tex. Code Crim. Proc. Ann. art. 11.071 § 5 (limiting circumstances in which relief can be granted on successive writs challenging the same conviction).  "When the result of filing a second habeas application in the state courts is so clear, it is appropriate to consider the petitioner's claim barred rather than first requiring the state court to deny a successive writ."  *Busby v. Dretke*, 359 F.3d 708, 724–25 (5th Cir. 2004) (citations omitted); *see also Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006) ("Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review.") (citation omitted)).

Howard has not presented this Court with any reason or explanation to

excuse his failure to raise this claim in state court,[1] nor does he argue that any actual prejudice will result from the procedural default. Howard does not contend that failure to consider the allegations will result in a fundamental miscarriage of justice. Because Howard failed to present these new allegations, which fundamentally alter his speedy trial claim, to the state habeas court, and because he offers no grounds on which to excuse the exhaustion requirement, consideration of the allegations is barred. *See Kunkle v. Dretke*, 352 F.3d 980, 987–88 (5th Cir. 2003) (upholding a finding of failure to exhaust an ineffective assistance of counsel claim in state court when the petitioner "failed to present . . . significant additional facts to the Texas Court of Criminal Appeals").

### 2. *Howard's Right to a Speedy Trial*

The Court will thus consider the merits only of the speedy trial claim Howard raised in state court based on the twenty-month delay between his arrest and trial. While "a defendant has some responsibility to assert a speedy trial claim," the Supreme Court "places the primary burden on the courts and the

---

[1] Respondent acknowledges that these parole-related facts were raised in Howard's state habeas reply, filed directly with the Texas Court of Criminal Appeals, rather than with the state habeas trial court, and separately from the appropriate writ materials. Under Texas law, the proper place to raise these claims was with the state habeas trial court, because the Court of Criminal Appeals generally has no factfinding authority. *Ex parte Simpson*, 136 S.W.3d 660, 668–69 (Tex. Crim. App. 2004). Review by the Court of Criminal Appeals is limited to the evidence contained in the state habeas trial court record, which did not contain the parole-related facts. *See id.* at 668 ("An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal." (citation omitted)). Accordingly, Howard did not properly raise the parole-related facts in state court and is therefore barred from raising them in federal court.

prosecutors to assure that cases are brought to trial." *Barker v. Wingo*, 407 U.S. 514, 529 (1972).  In considering a speedy trial claim, the court must conduct a balancing test, weighing "the conduct of both the prosecution and the defendant" and considering factors such as "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.* at 530. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case."  *Id.* at 522.  A speedy trial claim is a mixed question of law and fact.  *Amos*, 646 F.3d at 204 (citations omitted). Therefore, the state court determination on a speedy trial claim receives deference under the AEDPA unless contrary to or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1).  The AEDPA "requires us to give the widest of latitude to a state court's conduct of its speedy-trial analysis."  *Amos*, 646 F.3d at 205.

If one year passes between the time the speedy trial right attaches and trial, the delay "crosses the line from 'ordinary' to 'presumptively prejudicial.'"  *Amos*, 646 F.3d at 206 (citation omitted).  "The bare minimum required to trigger [speedy trial] analysis is one year."  *Id.* (citations omitted).  Beyond that "bare minimum," the "delay must persist for at least eighteen months" in order for "this factor to strongly favor the accused."  *Id.* at 206–07 (citations omitted).  The length of the

delay in the present case was approximately 587 days,[2] which is sufficient to demonstrate prejudice and trigger the *Barker* analysis. *See id.* at 206. Howard's trial was delayed beyond the one-year minimum for only eight months, however, well short of the eighteen months required for this factor to weigh heavily in Howard's favor. *See id.* at 207 (finding four months beyond the one-year minimum to be insufficient to weigh in favor of the accused). Thus while the delay was presumptively prejudicial, this factor does not weigh heavily in Howard's favor.

Respondent has the burden to provide reasons that justify the delay. *See Barker*, 407 U.S. at 531. Deliberate delays to disadvantage the defense weigh heavily against the state, while delays "explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state." *Amos*, 646 F.3d at 207 (citation omitted). "Unexplained or negligent delays" weigh against the state, "but not heavily." *Id.* (citation and internal quotations marks omitted). Respondent argues that the delay was in part the result of plea negotiations. Howard acknowledges in his habeas petition that he did participate in such negotiations. Ongoing plea negotiations are a valid reason to delay a trial. *See Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987). Respondent also argues that the

---

[2] Having found Howard's parole-related argument procedurally defaulted, this Court measures the length of delay from the time of Howard's arrest on or about January 24, 2006, to his trial, September 3, 2007.

delay was due to the state's inability to locate the complaining witness and her mother, who were both living in Florida, as well as the sexual assault nurse examiner, who was living in Massachusetts.  The Supreme Court has found that time necessary to locate a missing witness justifies an appropriate delay.  *Barker*, 407 U.S. at 531.  Furthermore, there is no evidence to suggest that the state delayed trial in a deliberate attempt to hamper the defense.  Because the delay was at least in part due to Howard's participation in plea negotiations and Respondent provides valid reasons to explain the delay, this factor weighs in favor of Respondent.  *See Amos*, 646 F.3d at 207 (citation omitted).

The third *Barker* factor is whether Howard "diligently asserted his speedy trial right."  *Id.* at 207 (quoting *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007)).  Assertion of the right "receives strong evidentiary weight," while failure to assert it "will make it difficult for a defendant to prove" denial of the right.  *Id.* (citations and internal quotation marks omitted).  Here, Howard states that his attorney told him it would do no good to assert his speedy trial right.  Respondent has presented evidence that shows Howard also agreed to five resettings between August 3, 2006 and August 30, 2007.  Because the record contains no evidence that Howard ever asserted his speedy trial right and Howard agreed to five resettings between his arrest and trial, this factor favors Respondent.  *See Barker*, 407 U.S. at 532 ("[F]ailure to assert that right will make it difficult for a defendant

to prove that he was denied a speedy trial.").

Prejudice to the defendant as a result of the delay is the final *Barker* factor. "[O]rdinarily the burden is on the defendant to demonstrate actual prejudice. But where the first three factors together weigh heavily in the defendant's favor, we may conclude that they warrant a presumption of prejudice, relieving the defendant of his burden." *United States v. Molina-Solorio*, 577 F.3d 300, 307 (5th Cir. 2009) (citations omitted). Here, only the length of delay weighs in Howard's favor. Accordingly, there is no presumption of prejudice. *See Amos*, 646 F.3d at 208 (finding no presumption of prejudice when only one of the three factors weighed heavily in the petitioner's favor). Howard therefore must demonstrate that he suffered "actual prejudice," which is "assessed in light of the three following interests of the defendant: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired." *Id.* (citation and internal quotation marks omitted). Howard's petition is devoid of any claim of prejudice resulting from the delay. Because Howard has the burden to demonstrate prejudice, and has failed to do so, this final factor in the analysis weighs against him.

Having conducted the balancing test as required by *Barker*, this Court finds that "fairminded jurists could easily conclude" that Howard was not denied his right to a speedy trial. *Amos*, 646 F.3d at 209. The state court's rejection of

Howard's claim was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law.   *See* 28 U.S.C. § 2254(d)(1). Respondent is entitled to summary judgment on this claim.

### C.   Ineffective Assistance of Counsel Claim

Howard also claims his trial counsel, Stanley G. McGee, was ineffective because McGee (1) failed to seek a speedy trial, (2) told the jury that Howard was convicted of using a weapon against police, (3) failed to call James Moore, the complaining witness's grandfather, as a potential alibi witness, (4) failed to call Howard's brother Roger Howard, as a character witness, and (5) failed to strike a juror who had indicated that his stepdaughter was sexually abused.  An ineffective assistance of counsel claim is evaluated under a "doubly deferential" standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).   Under the first level of deference, a petitioner must demonstrate that (1) his attorney's representation was so deficient that the attorney was not functioning as the counsel that the Sixth Amendment guarantees and (2) the defense was prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The first prong of this test is measured under "an objective standard of reasonableness."  *Id.* at 688.  A court's review of the trial attorney's performance must be "highly deferential."  *Id.* at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Under the second prong, the defendant has the burden to "affirmatively prove prejudice." *Id.* at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

The second level of deference is that afforded under the AEDPA, requiring this Court to afford deference to the state court's determination of Howard's ineffective assistance claim unless it was contrary to, or an unreasonable application of, the *Strickland* standard. *See* 28 U.S.C. § 2254(d)(1).

### 1. *Failure to Seek a Speedy Trial*

The Court has discussed at length Howard's speedy trial claim, and has concluded that the claim lacked merit. This conclusion "forecloses relief on his claim that his lawyer rendered constitutionally ineffective assistance of counsel by failing to file a motion for a speedy trial." *Amos*, 646 F.3d at 209. To prevail on such a claim, Howard must show that "there was a reasonable probability that the trial court would have granted it, or would have reversibly erred by refusing [the motion]." *Id.* (citation and internal quotation marks omitted). This Howard cannot

do.  *See id.* at 209–10.   Consequently, the state court could have reasonably determined that Howard's ineffective assistance claim based on his attorney's failure to seek a speedy trial also lacked merit.  *Id.* at 210.

### 2.   *Informing the Jury that Howard Used a Weapon Against Police*

According to the record, the state introduced evidence in the punishment phase showing that Howard had two prior convictions for attempted capital murder.   Howard pleaded not true to these enhancements, and McGee challenged the fingerprint evidence substantiating them.   During closing argument, McGee asked the jury to ignore the fingerprint evidence and then stated:

> [I]f you believe the prior conviction to be true, take note of something for me.  The complained of offense and attempted capital murder, *which could have been something like* using a weapon toward a police officer, that would be the most common thing that would come to my mind about attempted capital murder.  It happened in 1979.

Docket Entry No. 16-34 at 45–46 (emphasis added).  McGee went on to ask the jury to punish Howard only for the offense that they had found him guilty of committing, and not on the basis of his prior offenses.  In reality, Howard's prior convictions were based on a guilty plea for attempted murder during the commission of an aggravated robbery.  *Howard v. State*, 667 S.W.2d 524, 525 (Tex. Crim. App. 1984).

The record demonstrates that McGee's statements were an attempt to minimize the effect of the prior convictions on the jury by showing that they were

remote in time, unrelated to the instant offense, and perhaps not as heinous as "attempted capital murder" connotes.  McGee did not tell the jury that Howard had in fact been convicted of using a weapon toward a police officer, but rather used this as an example of one type of attempted capital murder.  Counsel's performance was not deficient.

Even if these statements fell below an objective standard of reasonableness, Howard has not demonstrated prejudice.  With or without McGee's statements, the jury would have likely found the prior convictions true and handed down the maximum sentence.  Because Howard cannot show that he would not have received the same sentence but for McGee's statements, he cannot demonstrate prejudice.  *See Strickland*, 466 U.S. at 694.  The state court's determination on this issue therefore was not contrary to, or an unreasonable application of, the *Strickland* standard.  *See* 28 U.S.C. § 2254(d)(1).

> 3.     *Failure to Call James Moore*

Howard assigns error to McGee's failure to call James Moore, the complaining witness's grandfather, who was a "possible alibi witness . . . in the presence of petitioner throughout the night in question."  Docket Entry No. 2 at 13. Howard argues that McGee failed "to locate and investigate this critical witness." *Id.* at 14.  But Howard does not allege with specificity what such investigation would have revealed.  "A defendant who alleges a failure to investigate on the part

of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also Williams v. Thaler*, No. H-08-3298, 2012 WL 217218, at *11–12 (S.D. Tex. Jan. 20, 2012) (finding no basis for habeas relief on a failure to investigate claim when petitioner did not allege what evidence an additional investigation would have uncovered).  Howard therefore cannot establish ineffective assistance based on McGee's failure to investigate Moore as a potential witness.

Further, "the presentation of testimonial evidence is a matter of trial strategy and . . . allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted).  "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness," the petitioner must "set out the contents of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Id.* (citation omitted).  Since Howard has provided no such evidence regarding Moore's potential testimony, he cannot prove an ineffective assistance claim based on McGee's failure to call Moore as a witness.

####       4.       *Failure to Call Roger Howard*

Similarly, Howard assigns error to McGee's failure to call his brother, Roger Howard, as a character witness.  He argues his brother "was a credible and potentially persuasive character witness who was present at the trial" and "was well aquainted [sic] with this family and was well aware of their transient, often inebriated lifestyle . . . ."  Docket Entry No. 2 at 16.  Howard has filed a letter from his brother indicating that he was present at trial, willing to testify, and the topics about which he would testify.

Respondent argues that during the guilt/innocence phase of trial, such testimony would not have been relevant, as Howard's character was not at issue. Additionally, according to Respondent, Howard's brother would have been subject to cross examination during the punishment phase, which would have revealed damaging information, such as Howard's two DWIs, allegations he had solicited a prostitute, and an incident in which he allegedly impersonated his brother to avoid prosecution.  Moreover, testimony about the "transient, often inebriated lifestyle" of the victim's family is not character evidence about Howard and was not relevant at the punishment stage.   Given these facts, Howard cannot "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101).  Habeas relief is not warranted on this ground.

20 / 25

5.      *Failure to Strike a Juror*

Howard's final complaint about his attorney's performance concerns McGee's failure to strike a venireperson.  The venireperson with whom Howard takes issue indicated that his stepdaughter had been sexually assaulted and asked to be excused from service because he was the sole provider in his household, stating, "[I]f I don't work then, we don't eat basically."  Docket Entry No. 16-30 at 31.  The venireperson also stated that he could listen to the evidence and make a decision based on that evidence, that he believed Howard was innocent, and that he could be a fair juror.

Like the failure to call a witness, decisions made during voir dire are generally matters of trial strategy.  *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995).  "[A] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006) (citation and internal quotation marks omitted).  McGee's failure to strike the venireperson does not rise to this standard.  The venireperson indicated that he could be impartial despite his stepdaughter's experience.  Several venirepersons asked to be excused from service for work reasons, and those types of requests are often denied.  Even if McGee had challenged the vernireperson, the judge could have denied the challenge.  As

Respondent points out, the presiding judge denied a challenge to a vernireperson who had indicated bias in favor of the state because that vernireperson also indicated a willingness to be objective.   Howard has thus failed to demonstrate deficient performance or prejudice due to McGee's failure to strike this venireperson, *see Strickland*, 466 U.S. at 687, and habeas relief is not warranted on this ground.

### 6.    *Cumulative Error*

Howard argues that McGee's cumulative errors in the state trial court entitle him to habeas relief.   The Fifth Circuit has explained that habeas relief may only be granted on such claims when "(1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process."   *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (internal quotation marks omitted)).   Howard has failed to establish any constitutional violation based on McGee's performance.   Accordingly, habeas relief is not warranted on cumulative error grounds.

### D.     Prosecutorial Misconduct

In Howard's final ground, he claims that he is entitled to habeas relief due to allegedly improper statements the prosecutor made during closing argument at both the guilt/innocence and punishment phases of trial.   Under Supreme Court precedent, "a prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Parker v. Matthews*, --- U.S. ---, 132 S. Ct. 2148, 2153 (2012) (per curiam) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)) (internal quotation marks omitted)).   This standard is a "very general one, leaving courts more leeway in reaching outcomes in case-by-case determinations."  *Id.* at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (internal quotation marks and punctuation omitted)).

Howard first takes issue with the prosecutor referring to him as a "child molester" four times and a "sick puppy" three times during closing arguments in the guilt/innocence phase of trial.   Docket Entry No. 16-33 at 40, 42, 46. Respondent replies that the prosecutor made these comments in response to McGee's statements during closing argument that Howard would not have assaulted a young girl when his adult girlfriend was in bed with him.  *See Darden*, 477 U.S. at 181–82 (finding no denial of due process when "[m]uch of the objectionable content was invited by or was responsive to the opening summation

of the defense").

The prosecutor also argued to the jury during punishment that theft was "[t]he only thing [Howard] has not committed in our penal code . . . ." Docket Entry No. 16-34 at 50.  The state had presented evidence to the jury showing that Howard had prior convictions for attempted capital murder, DWI, and driving with a suspended license.  At this stage the jury had also found him guilty of indecency with a child.  The prosecutor's statement was made as part of a larger argument to demonstrate Howard's disrespect for the law and to persuade the jury to assess the maximum penalty.  *See id.* at 181–82 (finding no denial of due process in part because "[t]he prosecutor's argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent").

*Darden*, the seminal Supreme Court case on improper argument, held that considerably more inflammatory arguments did not warrant habeas relief.  *Id.* at 180 nn.11–12 (quoting the prosecutor as referring to the defendant as an "animal" twice, arguing that "[h]e shouldn't be out of his cell unless he has a leash on him," and stating "I wish I could see [the defendant] sitting here with no face, blown away by a shotgun").  Howard has failed to show that the prosecutor's arguments infected the trial with unfairness to the extent required to establish a Due Process violation.  *See Parker*, 132 S. Ct. at 2153 (citation omitted).  The state trial court's

determination that Howard is not entitled to relief on this ground is neither contrary to, nor an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Respondent's Motion for Summary Judgment (Docket Entry No. 18).  A separate order dismissing the case will issue.

**IT IS SO ORDERED.**

SIGNED this 21st day of March, 2013.

_____
Gregg Costa
United States District Judge